

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

NOV 2 3 2009

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

SCIELE PHARMA, INC.,

Plaintiff,

v.

BROOKSTONE
PHARMACEUTICALS, L.L.C.
a/k/a ACELLA PHARMACEUTICALS, L.L.C.

Defendant.

Civil Action No. ___

1:09-CV-3283 JURY DEMANDED

### ORIGINAL COMPLAINT

Plaintiff Sciele Pharma, Inc. ("Sciele" or "Plaintiff") files this Complaint against Defendant Brookstone Pharmaceuticals, L.L.C. a/k/a Acella Pharmaceuticals, L.L.C. ("Brookstone" or "Defendant") and in support thereof allege as follows:

### NATURE AND BASIS OF ACTION

1.   This action arises out of Defendant's knowing and willful false and misleading advertising and promotion of its pharmaceutical products. Defendant's actions constitute false advertising in violation of Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B); contributory false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B); federal unfair competition in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. §

1125(a)(1)(A); violation of the Georgia Uniform Deceptive Practices Act, O.C.G.A. § 10-1-372; and unfair competition in violation of Georgia common law. Plaintiff seeks temporary, preliminary and permanent injunctive relief; actual damages; punitive damages; and recovery of Plaintiff's costs and reasonable attorneys' fees incurred in connection with this action.

## PARTIES

2.      Plaintiff Sciele is a corporation organized and existing under the laws of Delaware and having its principal place of business at Five Concourse Parkway, Suite 1800, Atlanta, Georgia 30328.

3.      Defendant Brookstone is a limited liability corporation organized under the laws of Georgia and having its principal place of business at 9005 Westside Parkway, Alpharetta, Georgia 30004.

4.      Upon information and belief, Defendant Brookstone is also known as Acella Pharmaceuticals LLC and transacts business within this judicial district and elsewhere under both names.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338 because this case arises under the Lanham Act, 15 U.S.C. §§ 1051, *et seq.*

6.      This Court has jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 and the doctrine of supplemental jurisdiction.

7.      The exercise of personal jurisdiction in Georgia is proper because Brookstone is a Georgia limited liability company, and regularly transacts business in the State of Georgia. Moreover, acts giving rise to Plaintiff's causes of action have occurred in the State of Georgia and, more particularly, within the Northern District of Georgia. Specifically, Brookstone markets, promotes, advertises, offers for sale, sells, and/or distributes two products, known commercially as "PNV Oral Tablet 27-0.6-0.4 MG" (hereinafter "PNV") and "PNV-DHA Oral Capsule 27-0.6-0.4-300 MG," (hereinafter "PNV-DHA") (collectively "PNV and PNV-DHA") to customers including wholesalers, retailers, chains, distributors, mail order houses, independent pharmacies, managed care organizations, and/or others throughout the United States, including in the Northern District of Georgia. Brookstone has purposefully and voluntarily placed PNV and PNV-DHA into the stream of commerce with the expectation that they will be purchased by consumers in the Northern District of Georgia. Furthermore, Brookstone falsely promotes PNV and PNV-DHA as generic substitutes for Sciele's PRENATE ELITE® and PRENATE DHA® to customers including wholesalers, retailers, chains, distributors, mail

order houses, independent pharmacies, managed care organizations, and/or others throughout the United States, including in the Northern District of Georgia.

8.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and injury giving rise to Plaintiff's claims have and continue to occur in this district.

## FACTUAL BACKGROUND

### Sciele Produces PRENATE DHA® and PRENATE ELITE® for Expectant Mothers' Special Nutritional Needs

9.    Founded in 1992 and headquartered in Atlanta, Georgia, Sciele is a pharmaceutical company specializing in the development, marketing and sales of branded prescription products focused on cardiovascular/diabetes, women's health and pediatrics.   Sciele's women's health products are designed to improve the health and well-being of women, and mothers and their babies.

10.    In 2004, Sciele introduced its prescription prenatal vitamin, PRENATE ELITE®.   In 2007, Sciele introduced its prescription prenatal vitamin, PRENATE DHA ® (Sciele's products are hereinafter referred to collectively as "PRENATE").   Both PRENATE products are indicated for use in improving the nutritional status of women throughout pregnancy and in the postnatal period for both lactating and nonlactating mothers.   A distinctive feature of PRENATE is that both products offer a unique 1 mg folate combination of 400 mcg of folic acid and

600 mcg of L-Methylfolate [6(S)-5-MTHF] (Metafolin®) (hereafter "L-5-MTHF").

11.    Folate is one of the most important nutrients found in prenatal vitamins.  Adequate folate intake during the time right before and just after a woman becomes pregnant helps prevent a number of congenital malformations, including serious neural tube defects.  Most prenatal vitamins contain only folic acid – a biologically inactive, synthetic form of folate that must undergo complex metabolism before it can be used by the body.  Unfortunately, some women are unable to fully metabolize folic acid into its active, protective folate form because of a common genetic mutation.

12.    PRENATE contains *both* folic acid and L-5-MTHF.  Unlike folic acid, L-5-MTHF is the natural, bioactive form of folate that is directly usable by a woman's body without additional metabolism.   The inclusion of both folate ingredients in PRENATE helps to ensure that all women and their unborn babies are provided with the full benefits of folate.

13.    The presence of L-5-MTHF in PRENATE is used by Sciele as a key selling point.  Sciele's unique L-5-MTHF consists of a single diastereoisomer, among other properties.

14.    Many products occur as mixtures of two or more diastereoisomers.

15.    The various diastereoisomers that are present in such mixtures can have radically different properties from one another.    In some cases, one diastereoisomer can have a therapeutic effect, while another diastereoisomer is therapeutically ineffective.    In the most severe instances, one diastereoisomer may be    highly    toxic    while    another    diastereoisomer    may    have    incredible pharmacological utility.    Thus, there can be great benefits to providing patients and consumers with a product that contains only a single diastereoisomer as opposed to a diastereoisomeric mixture.

16.    Diastereoisomers are distinguished from one another through naming conventions that reflect their different properties.    One such naming convention uses a "D" in the name of the compound for one diastereoisomer and an "L" in the name of the compound to indicate a different diastereoisomer.

17.    The L-form (*i.e.*, L-5-MTHF) used in PRENATE is superior to the D-form (*i.e.*, D-5-MTHF) because the L-form is the naturally occurring form of folate found in food and the human body.    The L-form is the biologically active form of folate and has proven to have a high degree of bioavailability (the rate at which a drug or other substance is available at the targeted place in the body) in humans. In contrast, the D-form is an unnatural form of folate, from which humans are unable to benefit.

18.    L-5-MTHF is the pure diastereoisomeric form of folate used by cells in the body. In humans, this particular compound is the predominant form in circulation and transport into the tissues, and it is the only folate that can cross the blood-brain barrier.

19.    While the D-form is inactive as a source of folate nutritional activity, scientific evidence raises concerns that this inactive folate is not inert in the body.

20.    In fact, the presence of any of the D-5-MTHF diastereoisomer may compete with the uptake and activity of the L-5-MTHF diastereoisomer and therefore reduce the overall usability of the compound.

21.    Sciele has expended extensive resources in the development, production and marketing of its PRENATE prescription prenatal vitamins.

22.    By virtue of the benefits contributed by L-5-MTHF, PRENATE has achieved success as prescription multivitamin/multimineral nutritional supplements  Sciele has sold in excess of 70 million tablets of PRENATE ELITE and over 40 million capsules of PRENATE DHA  since each product's launch.

## DEFENDANT'S KNOCK-OFF PRODUCTS

23.    Brookstone is in no way affiliated with Sciele or its related entities.

24.    Brookstone is a Georgia-based pharmaceutical company that develops, manufactures, markets and sells what it calls "niche generic

pharmaceuticals" or "specialty generic products." Defendant does not market its

alleged generic products to physicians. Rather, it convinces drug wholesalers,

distributors, pharmacies, pharmacists and national drug databases that its products

are generic substitutes for brand-name products. Its sales result from "generic"

substitution of its products for brand-name products.

25.    Brookstone promotes, markets, sells and distributes its products

nationwide, including Georgia.

26.    Upon information and belief, sometime in 2009, Brookstone saw an

opportunity to exploit the reputation and success of PRENATE. Specifically,

Brookstone engaged in the manufacture, distribution, marketing, sale and/or offer

for sale of alleged generic versions of PRENATE.

27.    Upon information and belief, before November 23, 2009, Brookstone

contacted national pharmaceutical databases and supplied those databases with

information regarding PNV and PNV-DHA.

28.    Upon information and belief, through at least its label, product insert

and marketing materials, Brookstone has represented that its PNV-DHA product

uses the following dietary ingredients in the following amounts:

| | |
|---|---|
| Vitamin C (ascorbic acid) | 85 mg |
| Vitamin D3 (cholecalciferol) | 200 IU |
| Vitamin E (d-alpha tocopherol acetate) | 10 IU |
| Vitamin B6 (pyridoxine HCl) | 25 mg |

| | |
|---|---|
| Folate ................................................................... | 1 mg |
|     (L-methylfolate as Xolafin™ 600 mcg) | |
|     (folic acid, USP 400 mcg) | |
| Vitamin B12 (cyanocobalamin) ........................... | 12 mcg |
| Calcium (calcium carbonate)............................... | 140 mg |
| Iron (ferrous fumarate) ........................................ | 27 mg |
| Magnesium (magnesium oxide) ........................... | 45 mg |
| Docosahexaenoic Acid (DHA)............................. | 300 mg |

29.    Upon information and belief, Brookstone's PNV-DHA product has the same methyltetrahydrofolate source as Brookstone's L-methylfolate-B6-B12 product, *i.e.*, a source it refers to as Xolafin™.[1]

30.    Upon information and belief, Brookstone's PNV product has the same methyltetrahydrofolate source as Brookstone's L-methylfolate-B6-B12 product.

31.    Upon information and belief, Brookstone has represented and continues to represent in its package insert that the Xolafin folate ingredient is the "primary biologically active isomer of folate and the primary form of folate in circulation," *i.e.*, L-5-MTHF.

32.    Upon information and belief, Brookstone's L-methylfolate-B6-B12 product does not use the dietary ingredient L-5-methylfolate (*i.e.*, L-5-MTHF), but instead uses the dietary ingredient D,L-5-MTHF (also called "5-MTHF").

---

[1] Brookstone's L-methylfolate-B6-B12 Oral Tablet 2.8-25-2 MG product has been listed by Brookstone as the equivalent of and substitutable for Pamlab's Metanx.

33.    D,L-5-MTHF (or 5-MTHF) is a different dietary ingredient from L-5-MTHF and has been separately listed with the FDA pursuant to a New Dietary Ingredient Notification submitted by General Nutrition Corporation ("GNC") in 1998.

34.    The GNC New Dietary Ingredient Notification specifies dietary ingredient D,L-5-MTHF as containing 50% each of the two diastereoisomers, the L-isomer and the D-isomer.

35.    The dietary ingredient L-5-MTHF used in PRENATE contains less than 1% of the D-isomer.  L-5-MTHF is therefore a substantially diastereoisomeric pure ingredient, whereas the ingredient D,L-5-MTHF contains approximately 50% of the L-isomer and approximately 50% of the D-isomer.

36.    Thus, upon information and belief, Brookstone's PNV-DHA and PNV products **do not** use L-5-MTHF, but rather use D,L-5-MTHF.

## Defendant Markets its Knock-Off Products as Generic Substitutes for PRENATE DHA and PRENATE ELITE

37.    Despite the fact that Brookstone's PNV-DHA and PNV products do not contain the dietary ingredient L-5-MTHF, but rather the dietary ingredient D,L-5-MTHF, Brookstone nonetheless markets its PNV-DHA and PNV products to drug wholesalers, distributors, pharmacies, pharmacists and others as generic equivalents to and substitutes for Sciele's PRENATE DHA® and PRENATE

ELITE®, respectively.    Defendant has had its knockoff products linked to PRENATE in national pharmaceutical databases that represent a major marketing channel to drug wholesalers, pharmacies and others, and that are used by pharmacists to decide which product to dispense when filling a prescription.

38.    In its communications, commercial advertising and/or promotion to drug databases, wholesalers, pharmacies, pharmacists and others in the pharmaceutical distribution chain, Defendant has made no effort to differentiate PNV-DHA and PNV from PRENATE other than on the basis of price.    Upon information and belief, in its communications, commercial advertising and/or promotion to drug databases, wholesalers, pharmacies, pharmacists and others in the pharmaceutical distribution chain, Defendant states and implies that PNV-DHA and PNV are generic versions of PRENATE DHA® and PRENATE ELITE® respectively, and labels its products as generic equivalents to PRENATE DHA® and PRENATE ELITE® respectively.    Upon information and belief, in its commercial advertising and promotion, Defendant does not inform drug databases, wholesalers, pharmacies, pharmacists or others in the pharmaceutical distribution chain that PNV-DHA and PNV do not actually contain L-5-MTHF nor that there

are no comparative studies showing that its knockoffs are therapeutically equivalent to PRENATE DHA® and PRENATE ELITE®.[2]

39.    Defendant seeks to capture market share from PRENATE by encouraging substitution of PNV-DHA and PNV for PRENATE DHA® and PRENATE ELITE®.

40.    Defendant's efforts have had their intended effect; based upon Defendant's commercial advertising and promotion, drug databases as well as wholesalers, pharmacies and others have "linked" PNV-DHA and PNV as generic equivalents to PRENATE DHA® and PRENATE ELITE®.  As a result of Defendant's commercial advertising and promotion, wholesalers and pharmacies in the Northern District of Georgia and across the country will cease purchasing PRENATE DHA® and PRENATE ELITE®, believing that PNV-DHA and PNV are equivalent, generic substitutes.  This would not occur unless Defendant had successfully created the false impression among drug databases, wholesalers, pharmacies, pharmacists and others in the pharmaceutical distribution chain that

---

[2] Unlike the marketing of "branded" pharmaceutical products which often occurs in the open, the advertising of generic pharmaceutical products primarily consists of private communications with wholesalers, retailers and others, intended to make them aware of the availability of a "generic" product and to encourage them to "link" the generic product to the branded product in their databases.  Although Sciele is not privy to the communications between Brookstone and its customers; it expects that evidence of these and similar communications by Defendant will come to light through discovery.

PNV-DHA and PNV actually contain L-5-MTHF and are genuinely generic to and substitutable for PRENATE DHA® and PRENATE ELITE®.

**Defendant's Advertising is Literally False and Misleading**

41.    Notwithstanding Defendant's advertising and promotional claims on the PNV-DHA and PNV's label, package insert and in other documents, PNV-DHA and PNV do not contain the same active ingredients as PRENATE.

42.    Although Defendant advertises and promotes the PNV-DHA and PNV as containing the same form of folate contained in PRENATE, PNV-DHA and PNV do not use L-5-MTHF in its formulation.  Instead, Defendant uses a racemic methylfolate comprised of both the L and D forms of 5-MTHF.  In contrast, PRENATE contains only L-5-MTHF; it does not contain any of the D form of 5-MTHF.

**Defendant's Products are Not Generic Equivalents to or Substitutes for PRENATE DHA® or PRENATE ELITE®,**

43.    Products classified as therapeutically equivalent can be substituted with the full expectation that the substituted product will produce the same clinical effect and safety profile as the prescribed product.

44.    A pharmacist presented with a doctor's prescription for a brand-name product may fill that prescription by dispensing the brand-name product prescribed

or a true "generic" version of the brand-name product.  This process is known as generic substitution.

45.    A generic product is only therapeutically equivalent to a brand-name product if such products are both pharmaceutical equivalents and bioequivalents.

46.    Products are considered to be pharmaceutical equivalents if they contain the same ingredient(s), including the same active ingredient(s), are of the same dosage form and route of administration, and are identical in strength or concentration.

47.    Products are considered bioequivalent products if they deliver the active ingredients to the bloodstream at the same rate and with the same level of absorption.

48.    For pharmacists and other medical professionals, the requirement of therapeutic equivalence including pharmaceutical equivalence ensures that a generic product substituted for the prescribed brand-name product is truly interchangeable and will provide the patient with the treatment the doctor ordered. This is critical because the doctor, not the wholesaler, distributor or pharmacist, is responsible for making the appropriate treatment decisions and tracking the patient's progress.

49.    State and federal law govern pharmacy practice, including generic product substitution. Most state and federal laws explicitly require that a substitute product be both pharmaceutically equivalent as well bioequivalent, and hence "therapeutically" equivalent to the brand-name product prescribed.    Thus pharmacists and other medical professionals expect, and rely upon the representations of a manufacturer, that a product advertised, promoted and sold as a generic product will be therapeutically equivalent to the brand-name product.

50.    Notwithstanding Defendant's advertising and promotional efforts, PNV-DHA and PNV products are not generic equivalents to or substitutes for PRENATE DHA® and PRENATE ELITE®.  To begin with, Defendant uses the dietary ingredient D,L-5-MTHF in its products and not L-5-MTHF.  Thus, Defendant's knockoffs do not contain the same active ingredients and are not pharmaceutically equivalent to PRENATE DHA® and PRENATE ELITE®.

51.    Defendant has not published or, upon information and belief, performed or commissioned any studies demonstrating that PNV-DHA and PNV delivers its active ingredients to patients at the same rate and in the same amount as PRENATE DHA® and PRENATE ELITE®.  Moreover, Defendant has not published or, upon information and belief, performed or commissioned any studies with regard to the effects of the D-5-MTHF diastereoisomer in the human body

when D-5-MTHF is administered. For example, the nutritionally inactive D-diastereoisomer may compete with the uptake and activity of the L-diastereoisomer, among other things. In the absence of testing, PNV-DHA and PNV cannot be presumed to be bioequivalent and therapeutically equivalent to PRENATE DHA® and PRENATE ELITE®. Indeed, PNV-DHA and PNV are not therapeutically equivalent to PRENATE DHA® and PRENATE ELITE®. Plaintiff will be harmed by Defendant's literally and impliedly false and misleading advertising and unfair competition. Defendant's marketing efforts have misled its customers and the consuming public into believing that its products are a generic equivalent to and substitute for PRENATE DHA® and PRENATE ELITE®. As a result, substitutions of PNV-DHA and PNV for PRENATE DHA® and PRENATE ELITE® will erode PRENATE DHA® and PRENATE ELITE®'s sales and goodwill as well as Sciele's revenues.

52. Plaintiff does not and cannot control the safety, effectiveness, or quality of Defendant's inferior product. Thus, doctors and patients who suffer bad experiences with PNV-DHA and PNV that is substituted for prescriptions of PRENATE DHA® and PRENATE ELITE® are likely to think less of both Sciele and Sciele's PRENATE products.

## COUNT I

### FALSE ADVERTISING IN VIOLATION OF SECTION 43(a)(1)(B)
### OF THE LANHAM ACT, 15 U.S.C. § 1125(a)(1)(B)

53.    Plaintiff incorporates herein and realleges, as if fully set forth in this Paragraph, the allegations of Paragraphs 1 through 52 above, inclusive.

54.    Defendant's product labels, package inserts, and other promotional marketing materials, which state that PNV-DHA and PNV contain the dietary ingredient L-5-MTHF, are materially false statements that misrepresent the nature, characteristics and qualities of these products.    These are material misrepresentations upon which at least the public, marketplace, pharmacists, customers or potential customers have, and will rely.    Defendant's actions therefore mislead and harm customers and consumers, among others, as well as damage Sciele's sales, good name and reputation in violation of Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

55.    Given Brookstone's knowledge that PNV-DHA and PNV contain the dietary ingredient D,L-5-MTHF, and not the dietary ingredient L-5-MTHF, the aforesaid acts were undertaken willfully and deliberately and with the intention of causing confusion, mistake, or deception.

56.    The aforesaid acts of Defendant have caused, and will continue to cause, damage to Plaintiff in an amount to be determined at trial.

75892244.1                                          - 17 -

57.    The aforesaid acts of Defendant have caused, and unless restrained and enjoined by this Court, will continue to cause irreparable harm, loss, and injury to Plaintiff for which Plaintiff has no adequate remedy at law.

## COUNT II

### CONTRIBUTORY FALSE ADVERTISING IN VIOLATION OF SECTION 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B)

58.    Plaintiff incorporates herein and realleges, as if fully set forth in this Paragraph, the allegations of Paragraphs 1 - 57 above, inclusive.

59.    Upon information and belief, Defendant has falsely told national pharmaceutical databases that PNV-DHA and PNV contain the dietary ingredient L-5-MTHF and is therefore pharmaceutically equivalent to Sciele's PRENATE DHA® and PRENATE ELITE®.

60.    Defendant induced the national pharmaceutical databases to engage in false advertising by describing the Brookstone products as pharmaceutically equivalent to and a potential substitute for Sciele's PRENATE DHA® and PRENATE ELITE®, which contain the dietary ingredient L-5-MTHF.

61.    Defendant knew or had reason to know that the national pharmaceutical databases would improperly describe the Brookstone products as pharmaceutically equivalent to Sciele's products; in other words, containing the dietary ingredient L-5-MTHF.

62.    As a result, the national pharmaceutical databases have made and continue to make materially false statements that misrepresent the nature, characteristics and qualities of Brookstone's products.    These are material misrepresentations upon which at least the public, marketplace, pharmacists, customers or potential customers have and will rely.    Defendant's actions, therefore, cause the national pharmaceutical databases to mislead and harm consumers, among others, as well as damage Sciele's sales, good name and reputation in violation of Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

63.    Given Brookstone's knowledge that its products incorporate the dietary ingredient D,L-5-MTHF and not the dietary ingredient L-5-MTHF, the aforesaid acts were undertaken willfully and deliberately and with the intention of causing confusion, mistake, or deception.

64.    The aforesaid acts of Defendant have caused, and will continue to cause, damage to Plaintiff in an amount to be determined at trial.

65.    The aforesaid acts of Defendant have caused, and unless restrained and enjoined by this Court, will continue to cause irreparable harm, loss, and injury to Plaintiff for which Plaintiff has no adequate remedy at law.

## COUNT III

## FEDERAL UNFAIR COMPETITION IN VIOLATION OF
## SECTION 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A)

66.     Plaintiff incorporates herein and reallege, as if fully set forth in this Paragraph, the allegations of Paragraphs 1 - 65 above, inclusive.

67.     Defendant's product labels, package inserts, and marketing materials, which state that PNV-DHA and PNV incorporate the dietary ingredient L-5-MTHF, are materially false statements.

68.     Such materially false statements have caused and are likely to continue to cause consumer confusion, mistake, or deception as to the origin, sponsorship or approval of the folate ingredient in PNV-DHA and PNV.

69.     Brookstone has willfully promoted PNV-DHA and PNV in interstate commerce so as to cause confusion or mistake among the public as to the origin, sponsorship or approval of the folate ingredient in PNV-DHA and PNV, all to Brookstone's profit and the public's and Sciele's damage.

70.     Given Brookstone's knowledge that PNV-DHA and PNV use the dietary ingredient D,L-5-MTHF and not the dietary ingredient L-5-MTHF, the aforesaid acts were undertaken willfully and deliberately.

71.    The aforesaid acts of Brookstone constitute use of false descriptions and false representations in interstate commerce in violation of § 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

72.    The aforesaid acts of Brookstone have caused, and will continue to cause, damage to Plaintiff in an amount to be determined at trial.

73.    The aforesaid acts of Brookstone have caused, and unless restrained and enjoined by this Court, will continue to cause irreparable harm, loss, and injury to Plaintiff for which Plaintiff has no adequate remedy at law.

<u>COUNT IV</u>
**COMMON LAW UNFAIR COMPETITION**

74.    Plaintiff incorporates herein and realleges, as if fully set forth in this Paragraph, the allegations of Paragraphs 1 - 73 above, inclusive.

75.    Sciele has become uniquely associated with PRENATE, and the public identifies Sciele as the source for PRENATE.

76.    Defendant has marketed and continues to market the PNV and PNV-DHA as generic to and substitute for PRENATE, and in doing so, has deceived, misled, and confused consumers. This has enabled Defendant to trade off of Sciele's reputation and good will.

77.    Defendant's acts constitute unfair competition in violation of Section 43(a) of the Lanham Act.

78.    Additionally, Defendant is liable for unfair competition under the Lanham Act because it intentionally induced and/or knew or had reason to know that drug databases, wholesalers, pharmacies, pharmacists and others in the pharmaceutical distribution chain falsely describe PNV and PNV-DHA as a generic to and substitute for PRENATE to pharmacists, but continued to sell the products to those entities.

79.    By reason of Defendant's conduct, Plaintiff has suffered, and will continue to suffer, damage to its business, reputations, and goodwill.  Pursuant to 15 U.S.C. § 1117, Plaintiff is entitled to damages for Defendant's Lanham Act violations, an accounting of profits made by Defendant on sales of PNV and PNV-DHA, and recovery of Plaintiff's costs for this action.

80.    Defendant's acts are willful, wanton, and calculated to deceive, and are undertaken in bad faith, making this an exceptional case entitling Plaintiff to recover additional damages and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

81.    Unless enjoined by this Court, Defendant's acts will irreparably injure Plaintiff's goodwill and erode its market share.  Pursuant to 15 U.S.C. § 1116, Plaintiff is entitled to preliminary and permanent injunctive relief to prevent Defendant's continuing acts.

## COUNT V

## VIOLATION OF THE GEORGIA UNIFORM DECEPTIVE PRACTICES ACT

82.    Plaintiff incorporates herein and realleges, as if fully set forth in this

Paragraph, the allegations of Paragraphs 1-81 above, inclusive.

83.    O.C.G.A. § 10-1-372 provides that:

> (a) A person engages in a deceptive trade practice when, in the course of his business, vocation, or occupation, he:
>
> (1) passes off goods or services as those of another;
>
> (2) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;
>
> (3) causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another;
>
> . . .
>
> (5) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have;
>
> . . .
>
> (7) represents that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;
>
> . . .

75892244.1                              - 23 -

> (12) Engages in any other conduct which similarly
> creates a likelihood of confusion or of misunderstanding.

84.    O.C.G.A. § 10-1-373 provides a private right of action to enforce the provisions of O.C.G.A. § 10-1-372.

85.    In the course of their business, Defendant, by and through its false and misleading representations of fact and conduct concerning PNV and PNV-DHA, respectively, have engaged in and continue to engage in deceptive trade practices in violation of O.C.G.A. § 10-1-372.

86.    Defendant has willfully engaged in its actions regarding PNV and PNV-DHA respectively, knowing them to be deceptive.

87.    By reason of Defendant's conduct, Sciele has suffered and will continue to suffer damage to its business, reputation and goodwill.

88.    Pursuant to O.C.G.A. § 10-1-373, Sciele is entitled to enjoin Defendant's unlawful conduct as well as recover reasonable attorneys' fees.

## COUNT VI
## COMMON LAW UNFAIR COMPETITION

89.    Plaintiff refers to and incorporate herein the allegations of Paragraphs 1-88, above.

90.    With full knowledge of Sciele's PRENATE, Brookstone has made false and misleading explicit and implicit representations to wholesalers,

pharmacists, and others, that its products are generic to PRENATE, and that they can be substituted for prescriptions for PRENATE.

91.     Brookstone's selective and misleading comparisons of PNV and PNV-DHA with PRENATE, and omission of relevant facts, are likely to cause confusion, mistake, or deception about the nature, characteristics, and qualities of their products in comparison, connection, or association with PRENATE.

92.     Brookstone knows, or in the exercise of reasonable discretion should know, that its marketing program encourages the sale and substitution of its knock-off products for prescriptions of PRENATE and is likely to result in the improper substitution of PNV and PNV-DHA for PRENATE, and the deception of doctors, pharmacists, patients, and others, about the nature, characteristics, and qualities of PNV and PNV-DHA in comparison, connection, or association with PRENATE.

93.     Brookstone's actions are willful and have been undertaken with the purpose of deceiving consumers.

94.     As a result of such conduct, Defendant has caused, and unless enjoined by this Court, will continue to cause consumer confusion as to the equivalence and interchangeability of its knock-off products with PRENATE.

95.    Sciele is entitled to damages for Defendant's unfair competition, an accounting of profits made on sales of PNV and PNV-DHA, and recovery of Sciele's costs of this action.

96.    As a result of Defendant's conduct, Sciele has suffered, and unless such acts and practices are enjoined by this Court, will continue to suffer damage to its business, reputation, and goodwill for which it is entitled to relief.

### JURY DEMAND

Plaintiff demands a trial by jury of all issues so triable.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for the following relief:

A.    The Court enter judgment that Defendant, as a result of its willful, deliberate, and materially false statements regarding the quality and content of its products has engaged in: false advertising in violation of Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B); contributory false advertising in violation of Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B); federal unfair competition in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A); violation of the Georgia Uniform Deceptive Practices act; and unfair competition in violation of Georgia common law.

B.    The Court enter judgment finding that this is an exceptional case;

C.    The Court enter orders preliminarily and permanently enjoining Defendant and its agents, servants, employees, attorneys, successors, and assigns, and all others in active concert or participation with them, from making or inducing others to make any false, misleading or deceptive statement of fact, or representation of fact in connection with the promotion, advertisement, display, sale, offering for sale, manufacture, production, circulation or distribution of PNV-DHA and PNV or any other prenatal supplement in such fashion as to suggest that such products contain L-5-MTHF, and/or are pharmaceutically equivalent, therapeutically equivalent, or bioequivalent to PRENATE DHA® and PRENATE ELITE®, respectively, or can be freely interchanged with or substituted for prescriptions of PRENATE DHA® and PRENATE ELITE®;

D.    A judgment and order that Defendant, its agents, servants, employees, attorneys, successors, and assigns, and all others in active concert or participation with them, be preliminarily and permanently enjoined from placing, and are ordered to remove, information linking its product to PRENATE DHA® and PRENATE ELITE® in any drug dispensing databases in the United States;

E.    A judgment and order that Defendant include in any advertisement or promotion comparing its products with PRENATE DHA® or PRENATE ELITE®; whether oral or written, a notice in location and typeface as prominent as

the comparison itself, that its product "is not therapeutically equivalent to PRENATE DHA® or PRENATE ELITE®. Therefore, the substitution of this product for PRENATE DHA® or PRENATE ELITE® may violate state law";

F.    A judgment and order that Defendant take corrective action to correct any erroneous impression persons may have derived concerning the nature, characteristics, or qualities of PNV-DHA and PNV, or PRENATE DHA® and PRENATE ELITE®; including without limitation the placement of corrective advertising to prevent the inducement of others from substituting PNV-DHA and PNV for prescriptions of PRENATE DHA® and PRENATE ELITE®;

G.    A judgment and order granting Plaintiff such other relief as the Court may deem appropriate to prevent the trade and public from deriving any erroneous impression concerning the nature, characteristics, or qualities of Defendant's products or from inducing others to substitute Defendant's products for prescriptions of PRENATE DHA® and PRENATE ELITE®;

H.    The Court grant an award of damages in an amount sufficient to compensate Plaintiff for injury it has sustained as a consequence of Defendant's unlawful acts;

I.    The Court grant an award of treble damages;

J.    The Court grant an award of punitive damages in an amount sufficient to punish and deter Defendant from engaging in further knowing acts of unfair competition;

K.    The Court grant the costs of this action and the reasonable attorneys' fees and other expenses of litigation Plaintiff incurs in connection with this action;

L.    The Court grant Plaintiff prejudgment interest and costs; and

M.    The Court grant such other, different, and additional relief as the Court deems just and proper.

Dated:  November 23, 2009                    Respectfully submitted,

                                             William B. Hill
                                             Georgia Bar No. 354725
                                             **R. Lawrence Ashe, Jr.**
                                             Georgia Bar No. 024500
                                             **Yonette Sam-Buchanan**
                                             Georgia Bar No. 623445
                                             **Matthew S. Knoop**
                                             Georgia Bar No. 140870
                                             **ATTORNEYS FOR PLAINTIFF**
                                             **SCIELE PHARMA, INC.**

ASHE, RAFUSE & HILL, LLP
1355 Peachtree Street, N.E.
Suite 500, South Tower
Atlanta, Georgia 30309
Telephone: 404.253.6000
Telecopier: 404.253.6060
Email: williamhill@asherafuse.com
Email lawrenceashe@asherafuse.com
Email: yonettebuchanan@asherafuse.com
Email: mattknoop@asherafuse.com

**OF COUNSEL:**
**Saul Perloff**
Texas Bar No. 00795128
**Katharyn Grant**
Texas Bar No. 24050683
FULBRIGHT & JAWORSKI L.L.P.
300 Convent Street, Suite 2200
San Antonio, Texas 78205
Telephone: 210.224.5575
Telecopier: 210.270.7205
Email: sperloff@fulbright.com
Email: kgrant@fulbright.com

## CERTIFICATE OF COMPLIANCE

I, **WILLIAM B. HILL**, certify that Plaintiff's Original Complaint complies

with Local Rule 5. I further certify that, in preparation of this report, the foregoing

document was prepared with font Times New Roman, 14 point, to include all text,

including headings, footnotes, and quotations.

**William B. Hill**
Georgia Bar No. 354725
**ATTORNEYS FOR PLAINTIFF**

ASHE, RAFUSE & HILL, LLP
1355 Peachtree Street, N.E.
Suite 500, South Tower
Atlanta, Georgia 30309
Telephone: 404.253.6000
Telecopier: 404.253.6060
Email: williamhill@asherafuse.com